DELAWARE, L. & W. R. CO. v. MADDEN.

(Circuit Court of Appeals, Second Circuit. April 10, 1917.)

No. 199.

1. MUNICIPAL CORPORATIONS ☞808(3)—INJURIES FROM DEFECTIVE STREETS—HOLES IN SIDEWALK.

   A hole in a sidewalk, about 18 inches long, 6 inches wide, and from 12 to 18 inches deep, was a dangerous obstruction or pitfall, and the party responsible for its being there was liable to those injured thereby.

2. MUNICIPAL CORPORATIONS ☞808(1)—DEFECTIVE STREETS—STATUTORY PROVISIONS.

   Cortland City Charter, § 80, construed as imposing on owners or occupants of abutting land liability to persons injured by their failure to maintain or repair the sidewalk, is not unconstitutional.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1684, 1690, 1694.]

3. MUNICIPAL CORPORATIONS ☞808(3)—DEFECTIVE STREETS—LIABILITY OF ABUTTING OWNERS.

   Cortland City Charter, § 80, authorizing the board of public works to require sidewalks, etc., to be repaired by adjoining owners or occupants, requiring notice to be given, and providing that the owner or occupant shall be liable for any damages from failure to make or repair the sidewalk, or for violation of a resolution or ordinance of the board, an adjoining owner is liable to a person injured by reason of a hole in the sidewalk, though the city council or board of public works has taken no action to require the repair of the sidewalk.

4. MUNICIPAL CORPORATIONS ☞808(1)—DEFECTIVE STREETS—LIABILITY OF ABUTTING OWNERS.

   As between the city and an abutting owner, the owner is primarily liable for the dangerous condition of the sidewalk, under Cortland City Charter, § 80.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1684, 1690, 1694.]

In Error to the District Court of the United States for the Northern District of New York.

Action by Robert H. Madden against the Delaware, Lackawanna & Western Railroad Company. Judgment for plaintiff (234 Fed. 731), and defendant brings error. Affirmed.

On writ of error to review a judgment entered upon the verdict of a jury in favor of plaintiff in the sum of $15,064. The action was

tried at Utica in the Northern district of New York in February, 1916, before Judge George W. Ray. A motion to set aside the verdict was denied. The parties will be referred to hereafter as they appeared in the District Court, viz., as plaintiff and defendant.

Thomson & Byrne, of Syracuse, N. Y., for plaintiff in error.

Clayton R. Lusk, of Cortland, N. Y., for defendant in error.

Before COXE, WARD, and ROGERS, Circuit Judges.

COXE, Circuit Judge. There is substantially no dispute as to the facts. No controversy arises as to the amount of the verdict. Contributory negligence is not asserted. The only question is whether the defendant is liable for the condition of the sidewalk which caused the injury. A brief statement of the facts is necessary.

The plaintiff is a resident of Ithaca, New York. On September 21, 1914, he came from Ithaca to Cortland and about 11 o'clock that night he was walking westerly along the south side of Elm street east of the Delaware, Lackawanna & Western Railroad. As he passed the flagman's shanty a short distance from the eastern railroad track he was looking to the south to see if any trains were approaching and he stepped into a hole in the walk on the south side of Elm street a short distance from where the railroad tracks cross the street. This hole was from a foot to 18 inches deep. The planks were in a decayed condition. One of the witnesses describes the walk as he saw it in September, 1914. He testified:

"The length and width and depth of the hole remained about the same during that time. I just looked at the plank and took my toe and kicked it along, and I would call it what we call dozy; * * * the plank was a sort of a dry rot."

In other words, the plank had decayed because it had been subjected for a long period of time, in summer and winter alike, to rain, wind and snow.

"The whole plank appeared to be old, and the appearance of having been there a long time, and that it had become decayed from rain and snow and wind, the elements."

[1] There can be no doubt that there was a hole in the walk at the point in question about 18 inches long, 6 inches wide and from 12 to 18 inches deep. There cannot be the slightest question that this was a most dangerous obstruction, or pitfall, to be permitted in a city street and that the party responsible for its being there is liable to those who were injured because of it.

The defendant's tracks run at an oblique angle across Elm street and the sidewalk on the south side thereof is a thoroughfare which the public uses and has a right to use. That such an obstruction was a menace to life and limb and that repair was necessary must be conceded. That someone was responsible for such a condition cannot be controverted and when such party is discovered he must pay for the result of his negligence.

Section 80 of the charter of the city of Cortland provides, inter alia, as follows:

"The board of public works shall have power to require sidewalks, curbs and gutters * * * to be relaid, reset, mended, or repaired by the owners, possessors or occupants of lands adjoining such curbs."

The law requires notice to be given and if the improvement or repair is not done within the time limited by the owners or occupants of adjacent land it will be done by the board of public works at the expense of such owner or occupant.

The clause of the city charter chiefly relied on by the plaintiff is as follows:

"The owner or occupant of lands fronting or abutting any street shall be liable for any injury or damages by reason of omission, failure or negligence to make, maintain or repair the sidewalk adjoining such lands or for a violation or nonobservance by him of a resolution or ordinance of the board of public works authorized by this section and shall not be relieved therefrom by the service of the notice above specified."

The defendant insists that in order to make this section applicable to the present situation it is necessary to read into it a number of additional qualifying and explanatory provisions. It seems, however, that it covers the facts in the present case without amendment or interpretation. Let us apply the statute to the facts developed here making it personal to these litigants. It would then read—The Delaware, Lackawanna & Western Railroad Company, the owner of lands abutting on Elm street shall be liable for any injury or damage by reason of omission, failure or negligence to make, maintain or repair the sidewalk adjoining such lands.

[2, 3] We see nothing startling or unconstitutional in such a construction. In the present case there was a dangerous hole made by decaying planks. The hole was wide enough and deep enough to cause a most distressing accident. In the nighttime it might easily be passed unnoticed. In fact, this is what happened. The necessity for repairs was so obvious and the danger of leaving such a menace to life and limb unrepaired, that it is difficult to understand why it was permitted to remain a single day. The obligation to repair was clearly upon the defendant and it was surely unnecessary that the city's council or its board of public works should be called together to decree that a new plank should be substituted for a rotten plank on one of the city streets. The language of the charter is not as clear and concise as it might be but this must always be so under our present system where law-making is often in the hands of neophytes and where ill-considered amendments are continually being made. The section of the Cortland charter is, we think, sufficiently clear to warrant us in holding that an abutting owner shall be liable for injuries occasioned by a dangerous cavity in a traveled walk adjoining his lands.

[4] The Case of the City of Rochester, 123 N. Y. 405, 25 N. E. 937, 10 L. R. A. 393, 20 Am. St. Rep. 760, is relied on by the defendant but we do not consider it controlling for the reason that the plaintiff in that case slipped and fell upon the sidewalk and brought an action against the city and recovered a judgment which the city paid. The city then brought action against the executors of the deceased abutting owner and the court held that they were not liable, it being the duty of

the city to keep the street free from ice and snow. The city alone was held liable to the public, the court holding that the statute did not impose any obligation on the abutting owner to those who used the walk. The law was for the benefit of the city to enable it to recover of the abutting owner if compelled to pay damages by reason of the dangerous condition of the walk. We are confronted with a different problem in the present case where the abutting owner is liable for damages caused by his failure to repair a perfectly obvious and dangerous defect in the walk. We are convinced that as between the city and the abutting owner the latter is primarily liable for the dangerous condition of the walk.

In Mullins v. Siegel-Cooper Co., 183 N. Y. 129, 75 N. E. 1112, a person injured because of the dangerous condition of a sidewalk in front of the defendant's premises, made so by a contractor driving his wagons over the walk with the permission of the abutting owners, was permitted to recover. To the same effect are Willy v. Mulledy, 78 N. Y. 310, 34 Am. Rep. 536; Village of Carthage v. Frederick, 122 N. Y. 268, 25 N. E. 480, 10 L. R. A. 178, 19 Am. St. Rep. 490; Brookville Borough v. Arthurs, 152 Pa. 334, 25 Atl. 551.

The law on the question here involved is not as explicit and uniform as could be desired, but we think the law as charged by the District Judge tends to protect the lives and limbs of those who use the public streets, and it makes such an accident as here occurred almost impossible. It says to the abutting owners that they must see to it that no dangerous pitfalls will be permitted on the walks immediately adjoining their property and that they will be liable if they permit such menaces to life and limb to continue.

The judgment is affirmed with costs.

ROGERS, Circuit Judge. I concur in the result. The action is brought by plaintiff to recover damages for injuries received from a fall on a sidewalk due to his having stepped into and caught his foot in a hole therein, while he was lawfully walking upon the same. The sidewalk abutted the land occupied by the defendant company, which is alleged to have permitted it to be and remain in an unsafe and dangerous condition, and to have failed to comply with its statutory and legal duty to repair and maintain the walk in a safe condition. There is no doubt that the plaintiff has suffered injuries of a very serious nature, and he has recovered a verdict for $15,064.

The question presented is whether his right of action is against the abutting owner or occupant for his failure to repair. The answer to that question depends upon the construction to be placed on the charter of the municipality. There are certain propositions which will not be disputed:

1. A "sidewalk" is a part of a "street" and is set apart for pedestrians. Bloomington v. Bay, 42 Ill. 503; Ord v. Nash, 50 Neb. 335, 69 N. W. 964; Brevoort v. Detroit, 24 Mich. 322; Pomfrey v. Saratoga Springs, 104 N. Y. 459, 11 N. E. 43.

2. There is no common-law liability resting on an abutting owner to keep any part of a street or of a sidewalk in front of his premises in repair. Whatever obligation rests on the lot owner or occupant, aris-

es out of the statutory obligations imposed either by the state or by the municipality. That is the law of the state of New York. City of Rochester v. Campbell, 123 N. Y. 405, 25 N. E. 937, 10 L. R. A. 393, 20 Am. St. Rep. 760 (1890). And it is the law in this country generally. Dillon on Municipal Corporations (5th Ed.) vol. 4, § 1704; Rupp v. Gurgess, 70 N. J. Law, 7, 56 Atl. 166 (1903).

3. The common-law rule that the abutter is not liable for defects caused by failure to repair does not extend to defects caused by himself. Where he creates the defect he must answer to third persons who are injured thereby. Davis v. Rich, 180 Mass. 235, 62 N. E. 375.

4. It is the law of the state of New York that a municipal corporation which accepts a charter from the state which imposes a duty to keep its streets in repair is liable to a person injured by its failure to perform that duty. The leading case is Weet v. Brockport, 16 N. Y. 161, note, decided over 60 years ago, and which has been adhered to ever since.

5. The rule is one of sound public policy. See Judge Cooley's opinion in City of Detroit v. Blackeby, 21 Mich. 84, 4 Am. Rep. 450 (1870).

6. And the municipality cannot relieve itself from this liability by delegating the duty to repair to another. In McQuillin on Municipal Corporations, volume 6, § 2728, the law is said to be that:

"A municipal corporation cannot delegate the construction and care of its streets and sidewalks to a private individual or corporation, or even to a quasi public corporation, and thereby evade its responsibility for such care and supervision, and thus escape liability for any damage resulting from the failure of the person or corporation to whom such care and supervision are delegated, to use that reasonable care and diligence to keep such streets or sidewalks in a reasonably safe condition for travel, which devolves primarily upon the municipal corporation itself. The obligation of keeping the streets in proper condition belongs to the municipality itself, and is a continuous one which cannot be shifted to another."

This doctrine has abundant support in decisions. Benton v. St. Louis, 217 Mo. 687, 118 S. W. 418, 129 Am. St. Rep. 561; O'Neil v. Chelsea, 208 Mass. 307, 94 N. E. 279; Harvey v. Chester, 211 Pa. 563, 61 Atl. 118; Cammett v. Haverhill, 197 Mass. 76, 83 N. E. 331; Pensacola v. Jones, 58 Fla. 208, 50 South. 874. But sometimes, as in this case, there is imposed upon the abutting owner the duty to construct and to repair at his own expense and if he fails after notice to do so the municipality may repair and assess upon his lot the expense incident thereto. I do not understand that the municipality is thereby relieved from its primary liability to repair. And I do not understand that ordinarily this imposes a liability upon the lot owner to respond in damages to a party injured by the failure to repair. In 28 Cyc. 1437, the law is stated as follows:

"In the absence of statute, an abutting owner is not liable for injuries occasioned to a person through failure to maintain a sidewalk in repair, and such liability will not grow out of a statute or ordinance authorizing the city to require abutting owners to construct or repair sidewalks and upon default construct or repair them at the expense of such owner; but the liability of an owner under such statutes or ordinances is limited to the fine or penalty prescribed by them. Where, however, the defective condition of the sidewalk

is due to its use by the abutting owner for his own private benefit, he becomes liable to one injured, and liability may be imposed by statute upon the abutting owner. Such liability will not accrue until the statutory conditions have been fulfilled, such as notice of defect and failure to repair."

The case of the City of Keokuk v. Independent District of Keokuk, 53 Iowa, 352, 5 N. W. 503, 36 Am. Rep. 226 (1880), is instructive. The ordinances of the city provided that in case it became necessary to repair sidewalks notice should be given by the city to the owner of lots abutting upon the street requiring him to make the repairs within a prescribed time. And in case he failed to comply the city might cause the repairs to be made and the cost should be assessed and levied against the lots. In case of failure to repair within 10 days the owner was made liable to a fine of not less than $1 or more than $20. The defendant was the owner of a lot and the sidewalk in front of it became out of repair and in a dangerous condition. The city notified the owner to repair and the notice was disregarded. As a result a person was injured and brought suit against the city and recovered a large judgment, which was paid. Thereupon the city brought suit against the abutting owner to recover the amount of the judgment it had paid and the costs. The court below held the city had no cause of action, and on appeal its decision was affirmed. In the course of a well-reasoned opinion the court said:

"Does the provision of the ordinance just stated impose liability upon the lot owner for injuries sustained by reason of the sidewalk not being repaired after he has been required and notified to make the repairs? In this case the necessity for, and character of, the repairs, and time and manner of doing the work, are determined by the city. Instead of assessing the costs of the improvement upon their lot in the first instance, the owner is called upon to do this work. In this case the city pursues a different manner of causing the improvement to be made. Instead of exercising its power through officers or contractors to employ workmen, it requires the owners to do what the officers of the city or contractors would do in other cases. Now, under what authority does the lot owner in this case make the improvement? Clearly, the authority of the city. For whom is the work done? The city. The owner, then, as the agent for the city, is authorized and required to make the improvement * * * In each case it is equally plain that liability for the injuries resulting from the nonperformance of the work rests, where the authority to do it is found, with the city. The lot owner, in doing the work, stands in the position of a taxpayer making payment of taxes. If he refuses to do the work, he simply fails to pay his taxes in a manner which the city may lawfully require, but he is not liable for injuries resulting from defective sidewalks which were not repaired for the reason he did not pay his assessment, either of labor or money. Who ever heard that a taxpayer of a city would be liable for injuries resulting from the failure of the city to make improvements, because the property owner refused to pay his taxes, and thus supply revenue, without which the city was not able to do the work?"

In Wilhelm v. City of Defiance, 58 Ohio St. 56, 65, 50 N. E. 18, 19, 40 L. R. A. 294, 65 Am. St. Rep. 745 (1898), the court declared that:

"In well-considered cases it has been held that the liability which the statute imposes upon the abutting owner * * * is not reconcilable with an unlimited liability for injuries occasioned by the defective condition of streets and sidewalks."

And the principle of Rochester v. Campbell, supra, is approved, namely, that to hold the owner of abutting property liable in an action

for indemnity would tend to relax the vigilance of municipal corporations in the performance of their duties as to sidewalks and impose that duty upon those who might be utterly unable to discharge it. And the court held that the abutting owner who had failed to make the required repairs was not liable to a person injured by his neglect.

The law of New York was laid down by the Court of Appeals in 1890 in what is a leading case. In City of Rochester v. Campbell, 123 N. Y. 405, 25 N. E. 937, 10 L. R. A. 393, 20 Am. St. Rep. 760. The facts in that case were that a pedestrian while walking along a sidewalk in front of property owned by defendant's testator stepped into a hole in the walk and was thrown down and permanently injured. Action was brought against the city and judgment was obtained and paid. The defendants were notified of the pendency of the action and requested to come in and defend it. The testator was not charged with neglect or the breach of any contract duty. His liability was predicated simply upon the statutory obligation to repair, and the assumption that an omission to perform it imposed a liability in favor of all persons who might be injured by reason of such omission.

The action was not brought in the first instance against the lot owner or his representatives, but, as has been pointed out, it was against the city, and thereupon the city brought this action against the defendant. It was therefore essential to determine whether any original liability to repair rested upon the defendant's testator. If it did not, this action could not succeed. It was sought to show that this liability rested on the abutting owner because of a provision in the city charter which provided that:

"It shall in all cases be the duty of the owner of every lot or piece of land in said city to keep the sidewalks adjoining his lot or piece of land in good repair, and also to remove and clear away all snow and ice or other obstruction from such sidewalk."

It was further provided that:

"The superintendent of streets shall have the power to repair any sidewalk, when the owner of the property shall neglect to repair the same for five days after written notice so to do has been served on him," and "the street superintendent shall also have the power to collect the expense of any such work or repair from the owner of the property."

The question presented to the court in that case, therefore, was whether an abutting owner incurred any liability to individuals or municipalities, for damages arising from streets rendered defective through want of repairs under a charter containing the provisions above mentioned. The matter was examined at length, and the court unanimously held that the action could not be maintained. The opinion was written by Chief Judge Ruger, and it was denied that the principle was applicable that where a statute enacts a thing for the benefit of a person he shall have a remedy for the thing enacted for his advantage. He said:

"There is nothing in this statute showing that the duty of repairs was imposed upon the lot owners for the benefit of the public generally, or any particular class of individuals. On the contrary, it is quite obvious that neither the public or individuals at all needed its benefits. * * * We think the

lot owners are liable to the municipality upon a neglect to repair the streets after notice, for the expense which the corporation has incurred in making such repair; but this, we think, is the extent of their liability under the statute. * * * It seems entirely unreasonable to suppose that the act was intended to impose the same duty upon two independent bodies. * * * It cannot be supposed that the Legislature intended to impose an absolute duty to repair upon an individual who could not exercise it except under the control of another. * * * The existence of an absolute power of control in one party, and an imperative obligation to repair in another is impossible. * * * There is no divided duty here. The obligation to keep the streets and highways in repair rested on the towns."

In Elliott's Roads & Streets (3d Ed. 1911) vol. 2, p. 348, that writer declares that the rule is general that where a city is bound to repair, the abutting owner is not liable for injuries caused by defects arising from a failure to make the repairs imposed on him by the law. City of Keokuk v. Independent District of Keokuk, 53 Iowa, 353, 5 N. W. 503, 36 Am. Rep. 226 (1880); Kirby v. Boylston Market Ass'n, 14 Gray (Mass.) 249, 74 Am. Dec. 682 (1860); Heeney v. Sprague, 11 R. I. 456, 23 Am. Rep. 502 (1877); Eustace v. Jahns, 38 Cal. 3 (1869); City of St. Louis v. Connecticut Mutual Life Ins. Co., 107 Mo. 92, 17 S. W. 637, 28 Am. St. Rep. 402 (1891); Wilhelm v. City of Defiance, 58 Ohio St. 56, 50 N. E. 18, 40 L. R. A. 294, 65 Am. St. Rep. 745. In 27 American & English Encyc. of Law, p. 156, note, it is said that:

"The failure of an abutting property owner to remove snow and ice from the sidewalk as required by a city ordinance does not impose any liability upon him for injuries to pedestrians."

The primary duty to construct and repair is on the city. But the board of public works is by the charter of Cortland expressly empowered to require sidewalks to be constructed or repaired by owners or occupants adjoining such sidewalks and to require this to be done "in such manner at such times and of such materials as it may prescribe and direct." It then provides that the board—

"shall cause to be served upon the owners or occupants of the lands adjoining such sidewalks * * * so to be improved * * * a copy of said resolution or ordinance with a notice that if the same is not done within the specified time by the several owners * * * it will be done by said board of public works at the expense of such owner or occupants."

It then provides for the filing or recording of affidavits of service of the resolution or ordinance in the office of the city clerk, and makes a certified copy thereof prima facie evidence of the facts stated therein. And in case the improvement is not completed within the time specified the board is authorized to make the improvement and having done so "without giving any further notice proceed to make a special assessment roll for the expense thereof against the delinquent owners or occupants, and upon said adjoining lands owned or occupied by them," etc. If these were the sole provisions of the charter on this subject, I should have no trouble in reaching the conclusion in this case that there is no liability on the owner or occupant to the injured party, the plaintiff herein.

It being the primary duty of the city to keep its streets, including sidewalks, in repair, and there being no such duty resting upon the

abutting owners, except as it is imposed by the charter, the liability of such owners as respects the making of repairs would not, in my opinion, attach until the notice to repair is given. The charter gives a right and imposes a liability which did not exist at common law. And to call the right into existence the charter conditions should be complied with. They were not complied with in this case. It is conceded that no notice was ever given by the board of public works to this defendant that the city, instead of making repairs, required them to be made by the abutting owner or occupant. In Willis v. Parker, 173 App. Div. 552, 159 N. Y. Supp. 676, the Appellate Division of the Supreme Court of New York had before it provisions similar to those above outlined, which were contained in the charter of the city of Auburn. The court said:

"The Special Term held that the owner or occupant was not liable directly to the injured person, but only to the city, by way of indemnity. I think that holding is correct, but, whether that is so or not, I am of the opinion that in order to make the owner liable at all, it is necessary to give the notice and take the proceedings prescribed by the charter for compelling an owner or occupant to repair the sidewalk, and it is not until he makes default that any liability arises against him from the defective condition of the sidewalk. It is not alleged in the complaint, nor is it claimed, that the owner has violated or failed to observe any of the ordinances, or to comply with any notice or requirement of the city respecting the sidewalk in question."

The cases are many in which the courts have held that the duty to repair when imposed upon the owner or occupant is imposed for the benefit of the city and not for third persons who may be injured. And the reasoning which sustains that conclusion would seem logically to lead to the further conclusion that the liability for the damages must run only to the party for whose sole benefit the duty is imposed. But in this case there is another provision in the charter and one not found in the charter under review in Willis v. Parker, supra. The Cortland charter, after stating that notice shall be given to the owner or occupant and that he is liable for failure to repair or for failure to observe the resolution of the board of public works adds these very significant words: "And shall not be relieved therefrom by the service of the notice above specified." This seems to me to show conclusively that the Legislature understood that the charter made the abutting owner liable without regard to the service of a notice to repair.

There is no escape from that conclusion, and for that reason I concur in the result announced in the opinion of the court.